IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES of AMERICA                  PLAINTIFF/RESPONDENT

V.            No. 5:09-CR-50103
            No. 5:12-CV-05110

IVAN J. SANCHEZ                                             DEFENDANT/PETITIONER

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions, (ECF *No.* 101) filed June 1, 2012, under 28 U.S.C. §2255. The Government filed its Response, (ECF No. 109) on July 5, 2012, and the Petitioner has not filed a Reply.

### I. Background

On November 4, 2009, Ivan J. Sanchez (hereinafter "Sanchez") was named in five counts of a seven-count Indictment. (ECF No. 14). Count One charged Sanchez with Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 846. Count Two charged Sanchez with distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Counts Three and Four charged Sanchez with distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). Count Seven charged Sanchez with distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).

On January 6, 2010, Sanchez appeared with counsel before the court for a change of plea hearing. (ECF No. 40). Sanchez's plea was the result of entering into a Plea Agreement with the United States in which he agreed to plead guilty to Count Seven of the Indictment that he had distributed 61.7 grams of actual methamphetamine in exchange for the United States dropping

Counts One, Two, Three, and Four. (ECF No. 41).

The United States Probation Office prepared Sanchez's Presentence Investigation Report (PSR) on March 3, 2010. No objections were made by either the United States or Sanchez. The PSR set Sanchez's base offense level at 32, based on his being accountable for 92.3 grams of actual methamphetamine. (PSR, ¶ 40). Sanchez received adjustments for his acceptance of responsibility which set his total offense level at 29. (PSR, ¶¶ 46 - 48). Sanchez received five criminal history points which established his criminal history category at III. (PSR, ¶ 55). Based on a total offense level of 29 and a criminal history category of III, Sanchez's suggested guidelines range was 108 to 135 months. (PSR, ¶ 73). However, because Sanchez's offense involved a statutorily required minimum sentence of 120 months, his applicable guidelines range was 120 to 135 months. (Id.).

Before sentencing, the United States filed a Motion for Downward Departure Pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 which recommended Sanchez be granted a two level reduction in his offense level resulting in a guidelines range of 87 - 108 months. (ECF No. 49). On May 24, 2010, the Court conducted a sentencing hearing. (ECF No. 51). The Court granted the United States' motion and sentenced Sanchez to 87 months imprisonment, 5 years supervised release, $15,000 fine, and a $100 special assessment. (ECF No. 59). Sanchez did not appeal his conviction.

On June 1, 2012, Sanchez filed the instant 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion") claiming various grounds for relief. (ECF No. 101).

## II. Discussion

**A. Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a section 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final".  See 28 U.S.C. § 2255; *Campa-Fabela v. United States*, 339 F.3d 993 (8th Cir. 2003).

Judgment was entered on May 25, 2010 (ECF No. 59) and the Defendant was sentenced to 87 months incarceration.  Under Fed.R.App.P 4(b), Sanchez had 14 days to file a notice of appeal but no appeal was taken.  Thus, the judgment in this case became final on or about June 8, 2010, 14 days after the judgment was entered. Consequently, under the provisions of 28 U.S.C. § 2255(f)(1), the time for filing a § 2255 motion expired on or about June 8, 2011.  Since the Defendant's motion is filed almost one year outside of the time period it is barred unless the time period can be equitably tolled.

A prisoner whose petition is belatedly filed may take advantage of equitable tolling where extraordinary circumstances beyond his control make it impossible for him to file a petition on time or when the action of the respondent lulled him into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8thCir. 2001). In general, neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177F.3d 390, 392 (5th Cir. 1999). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000, cert. denied, 534 U.S. 863 (2001) (equitable tolling not warranted in case of unrepresented prisoner alleging lack of legal knowledge or legal resources). In addition  "[i]neffective assistance of counsel generally does not warrant equitable tolling." *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir.2002).

The Defendant has not made any assertion that he was precluded from filing a timely

motion and therefore there is no basis for equitable tolling and his motion is barred by the limitations period.

**B. Voluntariness of Plea**

The Defendant seeks to avoid the limitations problem by asserting that his plea was not voluntary.

### 1. Rule 11 violation

The Defendant first contends that the "plea colloquy was deficient" under Rule 11. (ECF No. 101, p. 8). He asserts that the Rule 11 proceeding was "inconsistent with the rudimentary demands of fair procedure and constituted a complete miscarriage of justice because but for the threats made against the Petitioner he would not have plea [sic] guilty". (Id.).

During the Plea Hearing the Defendant acknowledged that the plea agreement was translated into Spanish, he discussed it with his attorney, he signed it, and no one forced him to make the agreement. (ECF No. 106, p. 4). The Defendant admitted that the facts set forth in the Plea Agreement were correct (Id., p. 5) and that he understood the range of punishment (Id., pp.5-6). The court then asked the Defendant if there was anything in the Plea Agreement that the Defendant wanted to ask the court about and the Defendant responded that he did not. (Id., p. 7). The court further explained to the Defendant that he could persist in his plea of not guilty and proceed to a trial on all seven counts. The Defendant acknowledged his right to proceed to trial. (Id., p. 7-8). The government then recited a factual basis for the plea (Id., pp. 8-10) and before asking the Defendant how he intended to plead, the Court asked if he had any question at all about the Plea Agreement or anything else discussed during the hearing to which Sanchez answered "no" and the Defendant then entered a plea of guilty. (Id., p. 10).

The Defendant has failed to establish any Rule 11 violation.

**2. Coerced Plea**

The Defendant contends that his plea was coerced "by improper threats to prosecute" him "on more charges unless he agreed to plead guilty". (ECF No. 101, p. 10). This claim seemed to be based on the charges that were filed against the Defendant.

The Defendant was named in five counts of a seven-count Indictment. (ECF No. 14). Count One charged Sanchez with Conspiracy to Distribute Methamphetamine. Counts Two through Four charged Sanchez with aiding and abetting the distribution of methamphetamine. Count Seven charged Sanchez with distributing methamphetamine.  Pursuant to the Plea Agreement the Defendant pleaded guilty to court seven and the government agreed to drop the remaining charges.

An accused's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of veracity. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997).  Where the defendant states that he understood the negotiated plea and that there were no promises other than the plea agreement, *Pennington v. Housewright*, 666 F.2d 329, 332 (8th Cir. 1981), cert. denied, -- U.S. --, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982), the plea will not be set aside as involuntary.

It is clear from the plea transcript that the Defendant understood the negotiated plea and that there were no promises other than the plea agreement.  The Defendant managed to negotiate with the state to drop the conspiracy charge and several aiding and abetting charges for the charge which involved a hand to hand delivery with an undercover police officer.  Probable Cause had been found to exist for the dismissed charges by the issuance of the Complaint (ECF

No. 1) against the Defendant and the subsequent issuance of an Indictment (ECF No. 14).

The Supreme Court has explained: "[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charges to file or bring before a jury, generally rests in his[/her] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (holding that threatening to bring otherwise legitimate charges to induce a defendant to accept a plea bargain "no more than openly present[s] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution").

Here, the only "threat" the Defendant faced was the risk of more severe punishment had he forced the United States to prove all five charges to a jury. *See Watkins v. Solem*, 571 F.2d 435, 436 (8 Cir.1978) ("By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial." ). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' - and permissible - 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Bordenkircher*, 434 U.S. 364 (*quoting Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)).

The contention that the Defendant was coerced into a plea by threats to prosecute on different charges is without merit. As the court explained to the Defendant had the right to proceed to trial on all of the charges the government had made against him but he choose to plea.

**C. Ineffective Assistance of Counsel:**

The Defendant next contends that his counsel was ineffective for failing to adequately investigate and prepare for trial by interviewing witnesses. (ECF No. 101, p. 11).

First of all, as stated above, the Defendant's contention his attorney was ineffective is barred because it is not timely, but even if it had been timely filed it is without merit. The Defendant makes only conclusory statements. He makes no factual allegations on who he thought his attorney should interview or what they would say. He does not set forth what motion he thought his attorney should file or what impact that it would have on his case. Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.). *See also Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . " *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir.1985); see also *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir.1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel).

**D.  Request for Sentence Reduction**

The Defendant requests this Court to reduce his sentence on the basis that he qualified to receive the benefit of the safety value and because he provided substantial assistance. Additionally, Sanchez requests a variance based on his status as a deportable alien and because he believes a sentence reduction would benefit the United States due to the economic crisis. (ECF No. 101, pp. 3-4).

These reduction requests are not cognizable under 28 U.S.C. § 2255 and even if they were

they are without merit. Defendant contends that he should have received the benefit of the "safety valve." This argument is procedurally barred. This argument could have been raised in a direct appeal but Petitioner failed to directly appeal his conviction or sentence. Because habeas relief is an extraordinary remedy which will not be allowed to do service for an appeal, significant barriers exist in the path of a petitioner who seeks to raise an argument collaterally which he failed to raise on direct review. *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)(citing *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).

In addition it does not appear that the Defendant qualifies for the safety value because he had five criminal history points and U.S.S.G. § 5C1.2(a)(1) requires a defendant to have no more than one criminal history point.

Finally, the likelihood of deportation upon release and the cost of imprisonment is not among the sentencing factors set out in § 3553(a). *United States v. Molina*, 563 F.3d 676, 678 (8th Cir.2009).

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this September 7, 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE